# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DO NO HARM,
11357 Nuckols Rd., Pmb 115
Glen Allen, VA 23059

*Plaintiff,*

    v.

AMERICAN ASSOCIATION OF
UNIVERSITY WOMEN,
1310 L St. NW, Suite 1000
Washington, DC 20005

*Defendant.*

No. 1:24-cv-01782

## VERIFIED COMPLAINT

Do No Harm brings this action against the American Association of University Women under the Civil Rights Acts of 1866, 42 U.S.C. §1981. Do No Harm seeks declaratory relief, injunctive relief, and nominal damages.

1.    "Racial discrimination is invidious in all contexts." *SFFA v. Harvard*, 600 U.S. 181, 214 (2023) (cleaned up). Healthcare especially. Yet, through its Selected Professions Fellowships (for the Focus Professions Group), AAUW is contracting only with certain racial groups. Medical students who are white—like Do No Harm's members, A and B—are not eligible.

**Focus Professions Group Fellowships**

Open only to women from ethnic minority groups historically underrepresented in certain fields within the United States: Black or African American, Hispanic or Latino/a, American Indian or Alaska Native, Asian, and Native Hawaiian or Other Pacific Islander.

2.     AAUW should know how invidious it is to discriminate based on immutable characteristics. AAUW was founded in 1881 to "open the doors for women's career advancement and to encourage more women to pursue higher education." AAUW, *Our History* (last visited June 20, 2024), perma.cc/E9RN-P7NC.

3.     Racial discrimination has been unlawful in private contracting since at least 1866, when Congress passed 42 U.S.C. §1981. Section 1981 "protects the equal right of all persons … to make and enforce contracts without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (cleaned up). Because AAUW "regards" the Selected Professions Fellowships to be a "contract" and requires the Fellows to "sign a contract as acceptance of the award," AAUW is violating §1981 when it discriminates based on race. *See* AAUW, *Selected Professions Fellowships* (last visited June 20, 2024), perma.cc/5B2D-FHU2.

4.     "Eliminating racial discrimination means eliminating all of it." *Harvard*, 600 U.S. at 206. No racial discrimination is benign: It always "'demeans the dignity and worth'" of every American "'to be judged'" by her race "'instead of by [her] own merit and essential qualities.'" *Id.* at 220. In recent weeks, the Eleventh Circuit held unlawful—and enjoined—a similar race-based grant program under §1981. *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 780 (11th Cir. 2024). Do No Harm is entitled to relief.

## PARTIES

5.      Plaintiff, Do No Harm, is a nationwide membership organization consisting of healthcare professionals, students, patients, and policymakers who want to protect healthcare from radical, divisive, and discriminatory ideologies.

6.      Do No Harm accomplishes its mission through education and advocacy about the dangerous ideas being embedded in medicine. It has, among other things, sued the federal government for introducing discriminatory "equity" criteria into Medicare, sued private medical organizations for creating racially exclusive fellowships, and filed Office of Civil Rights complaints against medical schools that create fellowships and scholarships that exclude students based on race.

7.      Do No Harm has at least two members who are ready and able to apply for the Selected Professions Fellowships, and who plan to apply once a court orders AAUW to stop considering race.

8.      Defendant, American Association of University Women, is a membership association that promotes education for women and girls by funding various scholarship, fellowship, and grant programs. AAUW is headquartered in Washington, D.C., which is also AAUW's principal place of business.

## JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction under 28 U.S.C. §1331.

10.      Venue is proper under 28 U.S.C. §1391 because AAUW resides here and a substantial part of the events and omissions giving rise to the claim occurred here.

# FACTUAL ALLEGATIONS
## I.    AAUW operates a race-based fellowship.

11.    AAUW operates a program called the Selected Professions Fellowships. *Selected Professions Fellowships*, supra. Each year, AAUW awards $20,000 to women who pursue master's or other professional degrees. *Id.* These funds may be used to pay for educational expenses, living expenses, childcare, and travel to professional meetings, conferences, or seminars. *Id.*

12.    According to AAUW, the Selected Professions Fellowships are awarded to women who intend to pursue a full-time course of study in concentrations where "women's participation traditionally has been low." *Id.* AAUW categorizes these concentrations into two groups—"Science and Technology Group" and "Focus Professions Group." *Id.*

13.    The Science and Technology Group is awarded to women who pursue master's programs in architecture, computer/information sciences, engineering, and math. *Id.* The Science and Technology Group are open to all women regardless of their race. *Id.*

14.    The Focus Professions Group is awarded to women who pursue degrees in business administration (MBA), law (JD), or medicine (MD or DO). *Id.*

15.    To be eligible for the Selected Professions Fellowships, the applicant must be a U.S. citizen or permanent resident, have achieved high standards of academic excellence, and show promise of distinction in their fields. *Id.* She must also be a full-time

student at an accredited U.S. institution during the fellowship year and must pursue a course of study within the United States over the full academic year. *Id.*

16.     The Selected Professions Fellowships are not open to previous recipients of any other AAUW national fellowship or grant. *Id.* And the Fellowships only support full-time coursework in the fields designated by AAUW, so an individual enrolled in a joint-degree program may not use the fellowship funds to support coursework in other fields, even if part of a joint-degree program. *Id.* AAUW also will not provide funding for distance-learning programs or programs that heavily depend on distance learning. *Id.* AAUW similarly won't support Ph.D. coursework or dissertations. *Id.*

17.     AAUW explains that the selection panel meets once a year to review the applications to the Selected Professions Fellowships. *Id.* Awards are based on the criteria that AAUW has published on its website and made "on a competitive basis according to funds available in a given fiscal year." *Id.*

18.     AAUW has listed the following review criteria for the Selected Professions Fellowships. *Id.*

- Demonstrated commitment to education and equity for women and girls.

- Reason for seeking higher education.

- Degree to which study plan is consistent with career objectives.

- Potential as a practicing professional and potential as a role model in new and innovative or nontraditional fields of study, research or practice.

- Intent to contribute (through chosen profession) to societal well-being and commitment to the advancement of women and girls.

- Documentation of opportunities in chosen field.

- Feasibility of study plans and proposed time schedule.

- Validity of proposed budget and budget narrative, including sufficient outside support.

- Quality of written proposal.

- Academic excellence and related academic success indicators.

- **Applicant is from an underrepresented racial/ethnic background.**

- Financial need.

- Priority is given to women who do not already hold a master's or first professional degree.

- Special consideration will be given to applicants who demonstrate their intent to enter professional practice in disciplines in which women are underrepresented, and/or their intent to serve under-resourced populations and communities, to pursue public interest areas, or who are non-traditional students.

(Emphasis added).

19.    AAUW explains that the application cycle for the Selected Professions Fellowships (for both Groups) opens on August 1 every year and ends on November 30. *Id.* The next application cycle will open on August 1, 2024, and close on November 30, 2024. *See id.*

20.    The next available fellowship year runs through June 30, 2026. *See id.*

21.    The Selected Professions Fellowships for the Focus Professions Group, however, are "[o]nly open to women from ethnic minority groups historically underrepresented in certain fields within the United States: Black or African American,

Hispanic or Latino/a, American Indian or Alaskan Native, Asian, and Native Hawaiian or Other Pacific Islander." *Id.*

22.    White women are not included in that list. They are ineligible.

23.    In fact, AAUW confirms that the Selected Professions Fellowships for the Focus Professions Group are "restricted to women of color who have been underrepresented in th[o]se fields." *Id.*

24.    The exclusion of white applicants was intentional. AAUW's current strategic plan confirms that AAUW seeks to "embody the goals and spirit of equity, inclusion, diversity[,] and intersectionality across all AAUW activities and participants." AAUW, *Strategic Plan 2.0* (last visited June 20, 2024), perma.cc/NC8B-C9L9. AAUW confirms that its "diversity" goal means "prioritizing women of color" across all AAUW's activities. *Id.*

25.    Consistent with this goal, at least since 2014, AAUW has advertised that the Selected Professions Fellowships for the Focus Professions Group were only open to women of color.

26.    For instance, in an article explaining how women may "fin[d] graduate funding opportunities," AAUW confirmed that the Selected Professions Fellowships (for business administration, law, and medicine) were "offered to women of color." AAUW, *Navigating Graduate Funding Opportunities* (last visited June 20, 2024), perma.cc/V7Z9-SB2V.

27.    On January 2, 2014, AAUW posted on Facebook, while advertising the Selected Professions Fellowships, that it hoped to have "[m]ore women of color in business, law & medicine."



28.     On December 16, 2016, AAUW posted on Facebook, "Are you a woman of color pursuing a Masters in a male-dominated field? We want to fund you!"



29.     On November 10, 2021, AAUW again stated that "Women of Color pursuing a JD, MBA, or MD" should apply to the Selected Professions Fellowships because the fellowships "are for" them.



30.    On November 9, 2022, AAUW posted on Facebook that "[s]pecial funds [were] available for women of color pursuing a law degree, medical degree, or MBA."



31.   Finally, on August 24, 2023, AAUW stated that the Selected Professions Fellowships are "for women of color" pursuing business, law, and medicine.



32.   Because white women aren't "women of color," aren't "underrepresented" according to AAUW, and aren't included in the list of races for whom the Selected Profession Fellowships are open, they are flatly excluded from applying. At a minimum, AAUW prefers applicants who are nonwhite to applicants who are white based on race.

## II.      The Selected Professions Fellowships are a contract.

33.      AAUW makes it clear that it intends to form a contract with the Fellowship recipient if she is accepted to the Selected Professions Fellowships.

34.      AAUW "regards the acceptance of a fellowship as a contract requiring the fulfillment of the following terms." *Selected Professions Fellowships*, supra.

35.      All Selected Professions Fellows agree to "sign a contract as acceptance of the award." *Id.* The instructions on AAUW's website "will become part of the fellowship contract if the applicant is awarded a fellowship." *Id.*

36.      The Fellows also agree to "pursue a full-time course of study during the fellowship year." *Id.* And the Fellowships may not be deferred or partially awarded. *Id.*

37.      The Fellows further agree to seek "prior written approval of AAUW" before making any changes to their study plans for the fellowship year. *Id.*

38.      In exchange, AAUW agrees to pay $20,000 to the Fellows directly (and not to their schools) to cover approved expenses. *Id.* AAUW will not pay for partial-year coursework, prerequisite coursework, or coursework that begins prior to the fellowship year.

39.      The application process for the Selected Professions Fellowships is also a contest that turns on the "[q]uality of written proposal." *Id.* Each year, AAUW awards the Fellowships "on a competitive basis according to funds available in a given fiscal year" based on the review by panels chosen by AAUW and final approval by AAUW. *Id.*

40.     For the award year 2022-2023, AAUW awarded 26 women with the Selected Professions Fellowships. *See* AAUW, *Fellowships & Grants Directory*, (last visited June 20, 2024), www.aauw.org/fellowships_directory/.

## III.  AAUW, through its Selected Professions Fellowships, discriminates against Do No Harm's white members.

41.     Do No Harm has at least two members—Members A and B—who are harmed by AAUW's Selected Professions Fellowships. Do No Harm's President, Kristina Rasmussen, knows Members A and B, has spoken to them about their intentions, and has personal knowledge of the relevant facts.

42.     Members A and B are members of Do No Harm. They are pseudonymous because they are currently in medical school, and if their participation in this litigation becomes public, they fear reprisal from other students on campus, their professors, school administrators, future employers, and the public. Members A and B also do not want AAUW to hold their involvement in this lawsuit against them when selecting the Fellowship recipients next time.

43.     Members A and B meet all the nonracial eligibility criteria for the Selected Professions Fellowships (specifically, for the Focus Professions Group Fellowships).

44.     Both are women and U.S. citizens. Both are currently enrolled as full-time students at accredited schools in the United States and pursuing a doctorate degree in osteopathic medicine. Member A recently completed her first year and will begin her

second year in the fall. Member B recently completed her second year and is going into her third year this fall.

45.     For both, the D.O. degree would be their first master's or professional degree. Both Members can and would obtain a letter of recommendation from professors from their schools under whom they recently studied. They both know who they would ask. As students in good standing, both can and would ask the deans of their schools to write them a letter of recommendation.

46.     Neither of them is pursuing a joint-degree program, pursuing a Ph.D., or seeking to use any fellowship funds toward Ph.D. coursework or a dissertation. Their D.O. programs are not a distance-learning program or heavily dependent on distance learning. And neither has ever received any AAUW national fellowship or grant.

47.     Members A and B desire and would benefit greatly from the vast professional network offered by AAUW to its Fellows. Both are strong candidates for receiving the Selected Professions Fellowship.

48.     Member A grew up in a rural area. When she was growing up, the women around her were mostly stay-at-home moms. There weren't any women in her life who worked professionally, like doctors or lawyers. Member A married and started a family when she was young. For that reason, although she had started attending college, she did not complete her bachelor's degree until after her kids got older. Member A was a teacher for four years in a rural part of the country.

49.     Member A decided to go to medical school for two primary reasons. She always loved learning about the human body. And she wanted to help people.

50.     Member A has a demonstrated commitment to education and equity for women and girls. She is passionate about encouraging women to challenge themselves to reach as far as they can. Member A had to overcome a background with no professional women role models. In her early years, Member A would admit that she had little drive to study. But she soon discovered a passion for learning. Member A completed over 250 undergraduate credits. She is passionate about showing other women that they could pursue both family and professional life. She has also encouraged her daughters to take challenging classes, prioritize their education, and explore all fields, including traditionally male-dominated professions like medicine. The same goes for her female students, many of whom had parents who worked in blue-collar jobs and could use encouragement to see the value in pursuing education. Member A always encouraged them to aim high, including by teaching them how to be competitive for scholarships.

51.     Member A wants to keep serving as a role model to others and mentoring them. Currently, Member A is active in her church and helps teach younger children. And later, when she has the opportunity, she wants to find a way to educate students about the harmful effects of drugs. Member A knows how to talk to them given her background as a teacher, and she's passionate about teaching them about health and making good choices.

52.     Once she becomes a doctor, Member A wants to practice medicine in rural communities. Member A has a heart for those communities because she grew up in one of them. Member A wants to help those communities because they experience significantly unmet healthcare needs.

53.     Member A's study plan is consistent with her career objectives. The D.O. program sets out the path she must follow to become a doctor. Having completed the first year, Member A's focus is now on doing well during her second year and preparing for the board exams. Member A wants to score high on the board exams so she can increase the chances of getting into a good residency program. Member A is on track to graduate in 2027.

54.     Member A has demonstrated financial need. She grew up poor. And although her husband currently works full time, Member A's family is of modest means and still financially responsible for taking care of their children. She has obtained a need-based scholarship from her school, but that's still not enough to cover everything. Member A is currently covering the remainder of the tuition and living expenses with student loans. The $20,000 fellowship funding would go toward paying for the tuition.

55.     Member B grew up in the Midwest and obtained her bachelor's degree from a public university. Member B decided to go to medical school after doing a summer internship in Kenya. There, she got to work with medical providers who cared for women. It was an eye-opening experience for her. Because Kenya lacks enough high-quality doctors and trained medical professionals, women there experience a high rate

of miscarriages. In addition, Member B got to work with women who were victims of sexual assault or rape, some of whom became pregnant as a result. This internship solidified her desire to go to medical school and obtain the level of training that she would need to serve vulnerable women.

56.     Member B wants to become an obstetrician-gynecologist. She is passionate about helping young pregnant women, teaching women about health, and empowering mothers to teach their daughters about health. Member B also wants to serve women in rural and underserved communities.

57.     Member B is always looking for ways to help others by educating them about health. She currently volunteers at a food pantry. One of the projects she is currently working on involves coordinating with a pediatrician to increase healthier meal options at the food pantry and to develop healthy food recipes for families to use. This project is in its infancy, but Member B wants to teach people about the value of taking care of their health to avoid medical interventions later.

58.     Member B is involved in various activities where she mentors others. Member B is on the leadership team for various student organizations, including as the vice president for a medical-missions organization at her school, where she is responsible for organizing community outreach and service projects. She is also a student ambassador for her school, so she frequently interacts with future applicants and students about what it's like to be a medical student. And Member B often gives advice to undergraduate students who have questions about medical school.

59.     Member B has always challenged herself to do well academically. She is on track to graduate on time in 2026. Doing well in medical school and on the board exams is especially important to Member B because it will increase the chances of matching with an OB-GYN residency. In her undergraduate, Member B graduated magna cum laude, was on the dean's list almost every semester, and received the dean's distinguished award.

60.     Member B's study plan is consistent with her career objectives. The D.O. program sets out the path she must follow to become a doctor.

61.     Member B would use the $20,000 fellowship funds to help pay for her tuition. Member B is currently paying for tuition with student loans. She has been covering her living expenses with the money that she saved while working during the gap year she took between college and medical school. During her gap year, Member B often worked 80-hour work weeks to save as much as she could to pay for medical school. It's important for her to minimize the student loans because she wants to serve others without the stress of debt or worrying about how much she will get paid. Member B will soon need to start taking out student loans to cover living expenses too.

62.     In the past, Member B has sought out merit-scholarship and research-grant opportunities. When she was in college, Member B received academic and athletic scholarships. She also received a grant to research organic chemistry under the supervision of a professor.

63.    If they get accepted and join the Selected Professions Fellowship, Members A and B are prepared to meet the program's requirements and expectations.

64.    Although Members A and B meet all the nonracial eligibility requirements for the Selected Professions Fellowship for the Focus Professions Group, they are not eligible to apply because they are white and do not identify as any other ethnicity. If they did apply, their applications would either be rejected for not meeting the racial requirement or heavily disadvantaged. They both find it hurtful and unfair that their skin color, which they can't control, would be considered by AAUW in any way.

65.    Members A and B are ready and able to apply to the fellowship's next available application cycle program if a court orders AAUW to stop discriminating against white applicants. They plan to apply if a court provides that relief.

## CLAIM FOR RELIEF
### COUNT
### Violation of the Civil Rights Act of 1866
### (42 U.S.C. §1981)

66.    Do No Harm repeats and realleges the preceding allegations.

67.    AAUW is violating §1981 by intentionally excluding certain applicants from contractual relationships because of their race.

68.    Section 1981 guarantees "[a]ll persons … the same right … to make and enforce contracts … as is enjoyed by white citizens." 42 U.S.C. §1981(a). The Act prohibits discrimination by "nongovernmental" actors like AAUW. 42 U.S.C. §1981(c).

And it authorizes equitable and legal relief, including damages. *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975).

69.     Members A and B are protected by §1981, whose "broad terms" bar discrimination "against, or in favor of, any race." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976). Titled "Equal rights under the law," §1981 "guarantee[s] continuous equality between white and nonwhite citizens," *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 208 (2019), by protecting the "equal right of all persons … to make and enforce contracts without respect to race," *Domino's*, 546 U.S. at 474 (cleaned up). Section 1981 "forbids racial discrimination in the making and enforcement of private contracts … whether the aggrieved party is black or white." *Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 342 (5th Cir. 1981).

70.     AAUW's Selected Professions Fellowships form a contract. "The term contract, as used in §1981, refers to a right in the promisee against the promisor, with a correlative special duty in the promisor to the promisee of rendering the performance promised." *Adams v. McDougal*, 695 F.2d 104, 108 (5th Cir. 1983) (cleaned up). Stated differently, a contract is "'an agreement to do, or refrain from doing, a particular thing, upon sufficient consideration.'" *Fearless Fund*, 103 F.4th at 775 (quoting 17A Am. Jur. 2d Contracts §1). AAUW expressly "regards the acceptance of a fellowship as a contract requiring the fulfillment of the following terms." *Selected Professions Fellowships*, supra. And all Selected Professions Fellows "sign a contract as acceptance of the award." *Id.*

71.    AAUW's Selected Professions Fellowships also form a contract because the selection process amounts to a contest. AAUW judges applications "on a competitive basis" based on the "criteria outlined" on its website. *Id.* This process of "select[ing]" winners based on "merit" is a "bona fide contest." *Brooklyn Daily Eagle v. Voorhies*, 181 F. 579, 582-83 (C.C.E.D.N.Y. 1910); *accord Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1404-05 (E.D. Cal. 1994) ("answering an essay question" is "a contest"). "A contest is a common example of a unilateral contract." *Personavera, LLC v. Coll. of Healthcare Info. Mgmt. Execs.*, 2021 WL1313108, at *4 (E.D. Pa. Apr. 8). "[N]early all jurisdictions have adopted the rule that contract law governs the sponsor-contestant relationship." *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1104 (10th Cir. 2001) (cleaned up).

72.    AAUW's Selected Professions Fellowships implicate the right to "make … contracts." §1981(a). Section 1981 "protects 'would-be contractor[s]' … to the same extent that it protects contracting parties." *Fearless Fund*, 103 F.4th at 776. The statute broadly "offers relief when racial discrimination blocks the creation of a contractual relationship." *Domino's*, 546 U.S. at 475.

73.    AAUW is violating §1981 by intentionally limiting the formation of contractual relationships based on race. A policy that is "discriminatory on its face" supplies "direct evidence" of discriminatory intent. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). So does "a corporate decision maker's express[ed] desire to avoid" contracting with members of a certain race. *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th

Cir. 2006) (cleaned up). Here, there's both. AAUW's eligibility criteria is "discriminatory on its face," *Thurston*, 469 U.S. 111, 121, because it limits eligibility to women of color. And AAUW's "corporate decision maker[s]" have expressed a "desire to avoid" contracting with students who aren't women of color. *Amini*, 440 F.3d at 359. AAUW has repeatedly stated that the Selected Professions Fellowships are only for women of color. So Do No Harm "is not required to make any further allegations of discriminatory intent or animus." *Juarez v. Nw. Mut. Life Ins.*, 69 F. Supp. 3d 364, 370 (S.D.N.Y. 2014).

74.     Race is a but-for cause of Member A's and Member B's "'loss of a legally protected right'" to make contracts. *Newman v. Amazon.com, Inc.*, 2022 WL 971297, at *7 (D.D.C. Mar. 31). "So long as the plaintiff's [race] was one but-for cause of that decision, that is enough." *Bostock v. Clayton County*, 590 U.S. 644, 656 (2020). But for the fact that Members A and B are white, they would have had the "same right" as women of color to apply for the Selected Professions Fellowships and "make … contracts" with AAUW. §1981(a). Because Member A and Member B are white, they are ineligible to apply or at least heavily disadvantaged if they were to apply.

75.     AAUW's discrimination cannot survive strict scrutiny. *See Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003). "[A]ll racial classifications … must be analyzed by a reviewing court under strict scrutiny." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995). AAUW "bears the burden to prove that the reasons for any racial classification are clearly identified and unquestionably legitimate." *Fischer v. UT at Austin*, 570

U.S. 297, 310 (2013) (cleaned up). There is no compelling interest that justifies categorically excluding white applicants based on their race. Nor is AAUW's program narrowly tailored to achieve that compelling interest. A categorical exclusion of an entire racial group is, by definition, not narrowly tailored.

## PRAYER FOR RELIEF

Do No Harm asks this Court to enter judgment in its favor and against AAUW and to provide the following relief:

A.      A declaratory judgment that AAUW, through its Selected Professions Fellowships for the Focus Professions Group, is violating §1981.

B.      A temporary restraining order and a preliminary injunction barring AAUW, before the merits of this action are resolved, from opening or closing the application window, awarding the Selecting Professions Fellowships for the Focus Professions Group, or otherwise operating this fellowship program as currently structured.

C.      A permanent injunction barring AAUW from seeing or considering applicants' race when selecting the Selected Professions Fellows for the Focus Professions Group.

D.      Nominal damages in the amount of $0.01.

E.      Reasonable costs and expenses of this action, including attorneys' fees, under 42 U.S.C. §1988 and any other applicable laws.

F.      All other relief that Do No Harm is entitled to.

Dated: June 20, 2024

Respectfully submitted,

*/s/ Cameron T. Norris*
Thomas R. McCarthy (DC Bar #489651)
Cameron T. Norris (VA Bar #91524)
 *Lead Counsel*
Frank H. Chang (DC Bar #1686578)
C'Zar Bernstein (DC Bar #1736561)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
frank@consovoymccarthy.com
czar@consovoymccarthy.com

*Attorneys for Do No Harm*

# VERIFICATION

I, Kristina Rasmussen, declare as follows:

1.      I am over the age of 18, of sound mind, and otherwise competent to sign this verification.

2.      I am the Executive Director of Do No Harm.

3.      I have reviewed this verified complaint.

4.      For the allegations within my personal knowledge, I believe them all to be true.

5.      For the allegations not within my personal knowledge, I believe them to be all true based on my review of the cited materials and communications with Members A and B.

6.      Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 20, 2024

_____
Kristina Rasmussen
Executive Director of Do No Harm